1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3

4    GLYNN D. AKINS,

5                    Plaintiff,
     -v-                                      Case No. 10-12755
6
     STATE FARM MUTUAL AUTOMOBILE
7    INSURANCE COMPANY,

8                    Defendant.
     _____/
9

10       DEFENDANT'S MOTION TO COMPEL DEPOSITIONS, ET AL

11          BEFORE THE HONORABLE MARK A. GOLDSMITH

12       Flint, Michigan, Wednesday, July 27th, 2011.

13

14   APPEARANCES:

15

16   FOR THE PLAINTIFF:       BENJAMIN SAYLES REIFMAN  (P71387)
                              39400 Woodward Avenue
                              Suite 200
17                            Bloomfield Hills, MI 48304

18

19   FOR THE DEFENDANT:       STACEY L. HEINONEN  (P55635)
                              25900 Greenfield Road
20                            Suite 326
                              Oak Park, MI  48237
21

22

23

24   David B. Yarbrough, CSR, FCRR
     Official Court Reporter
25   (313) 410-7000

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS

NONE

```
 1          Flint, Michigan

 2          Wednesday, July 27th, 2011.

 3          At or about 2:16 p.m.

 4                   --    ---    --

 5          THE CLERK OF THE COURT:  Calling case number

 6   10-12755, Akins versus State Farm.  Counsel, please

 7   state your names for the record.

 8          MS. HEINONEN:  Good afternoon, your Honor.

 9   Stacy Heinonen for the defendant, State Farm.

10          MR. REIFMAN:  Benjamin Reifman on behalf of

11   the plaintiff.

12          THE COURT:  All right, good afternoon.  We

13   have a few motions that are up for hearing today.

14          MS. HEINONEN:  Actually your Honor there may

15   be one that we can take out of your pile for today.

16   It's the motion that deals with Dr. Shiener and to

17   enforce the subpoena.  Before I left for today's hearing

18   this afternoon, he had delivered his original file to

19   our offices so we're having that copied.

20          THE COURT:  All right.  So that's resolved?

21          MS. HEINONEN:  Yes, your Honor.

22          THE COURT:  Okay.  I didn't see a response

23   to it so now I think I know why.  All right.  That was

24   docket 61 so that will be denied as moot.  All right,

25   the motions that are still up then are docket 57 which
```

1    seeks to compel the in-house nurse evaluation, that's by

2    the defendant.  Docket 58, also by defendant, seeks to

3    compel depositions of plaintiff and plaintiff's father

4    and certain treaters.  Docket 54 is a motion by the

5    plaintiff that seeks certain investigation documents and

6    then we have docket 56 and that's a motion by defendant

7    to seek adjustment to the schedule.  Some of these items

8    interrelate.  I have reviewed all of the motions and

9    responses so I'm going to give each side five minutes to

10   address these motions and address anything you like.

11   We'll start with the defendant because I think you filed

12   more motions than the plaintiff.  Go ahead.

13            MS. HEINONEN:  Your Honor, do you prefer

14   that I speak at the podium?

15            THE COURT:  No, any place.

16            MS. HEINONEN:  Okay.  Very briefly.  I'll

17   start with the motion for the in-home evaluation by the

18   RN or OT.  In this case plaintiff has issues relating to

19   orthopedic injuries sustained in the 2005 accident and

20   he also claims cognitive disabilities arising out of

21   that accident as well.  He's currently submitting

22   attendant care calendars claiming approximately between

23   18 and 24 hours of attendant care per day.  To what

24   extent that care and the amount of care differentiates

25   between orthopedic injuries and cognitive injuries, we

1   don't really know.  We have generic descriptions

2   concerning what may be done in a given month.

3   Nevertheless even if the care is necessitated because of

4   cognitive complaints, reasonable steps can be taken to

5   ensure that Mr. Akins' safety is given full priority and

6   due care, but perhaps without a requirement that

7   somebody be there on a 24-hour basis.

8            There's also an issue in the case with

9   regard to the, what type of attendant care is needed;

10  behavioral intervention versus supervision to keep him

11  out of dangerous situations so to speak.  The behavioral

12  intervention claimed by plaintiff requires a hire hourly

13  rate they assert, about 30 dollars per hour versus

14  something less for just general supervision.  The

15  in-home evaluation would enable not only to ascertain

16  whether different things could be done to ensure his

17  safety, for example, setting alarms on the doors and

18  windows if there's a concern he may get up and leave the

19  home in the night or, and to ascertain what exactly is

20  done in the home, are there certain circumstances where

21  Mr. Akins may be getting out of control and a care

22  provider really does step in and try to channel his

23  behavior in a different way, what methods are used.

24  Right now we don't know.  There's been no recommendation

25  for care based on an observation of what is going on in

1    the home.  That hasn't been observed in any fashion.  I

2    understand there are concerns with persons the insurance

3    company may select to go in and do this, but we can

4    always seek to have somebody from the Rehabilitation

5    Institute of Michigan from which Mr. Akins obtained

6    treatment very early on which is associated with the

7    Wayne State University.

8                    THE COURT:  What about the argument that the

9    statute provides it's only for physician examination?

10                   MS. HEINONEN:  I'm sorry?

11                   THE COURT:  What about the argument that the

12   statute on provides for physician evaluation?

13                   MS. HEINONEN:  That's for a medical

14   evaluation.  I think that it comes into play in

15   considering that the insurance company is trying, the

16   insurance company is trying to gather information in

17   discovery concerning the treatment that's necessary, the

18   needs that he has as well as under an inspection

19   relating to the premises.  This does not --

20                   THE COURT:  I'm sorry, you said under

21   section what?

22                   MS. HEINONEN:  Inspection relating to the

23   premises so I believe off the top of my head your Honor,

24   FRCP 34, that deals with inspections.

25                   THE COURT:  You mean you'd want to just go

1    in there and look at an empty premise?

2           MS. HEINONEN:  No, your Honor.  We'd like to

3    go into his home and actually observe his activities

4    during the day, but your Honor, this is not an issue

5    that's been directly decided by published authority so

6    it's, but it's an issue that's arisen and at least under

7    the No Fault Statute MCL 500.3159 I believe provides the

8    company with the right to go in and obtain discovery

9    concerning facts about his treatment and his condition

10   and that effectively will follow through with the needs

11   that he may require as a result of this accident.

12           With regard to the other motions that State

13   Farm has filed, your Honor, the motion to extend dates,

14   it's pretty much in conjunction with the motion to

15   compel depositions.  We've, umm, since your Honor

16   granted our extension in April, we've been attempting to

17   get the depositions we need on both sides.  The

18   difficulty appears to have arisen because our firms are

19   involved in several cases together and the issue that

20   we've been having is many of -- well, all of the

21   communications and dates for depositions are to be

22   scheduled with Mr. Andrews who is insanely busy just as

23   we are, too.  I know that his client would like to have

24   him handle the various depositions just as State Farm

25   would like to have Jim Hewson handle the depositions on

1    behalf of the insurer, but that's not always practical

2    or possible so there's -- I'm happy to --

3              THE COURT:  Well, you know I already

4    extended these dates once --

5              MS. HEINONEN:  Yes, I understand --

6              THE COURT:  -- and I understand everybody's

7    busy, I think that's great for your respective law firms

8    that you're fully employed and maybe it's time to hire

9    some more people and spread the enjoyment of practicing

10   law among more lawyers and also keep to your schedules,

11   but you know, I can't keep adjourning schedules just

12   because I have busy lawyers in front of me.  I was

13   reasonable in extending this once and then you come in

14   on the very last day of the extended discovery period

15   and you ask me to extend it again and you want to take

16   something like 10-plus depositions or more.

17             MS. HEINONEN:  These depositions have all

18   been noticed before and actually your Honor Mr. Andrews

19   and I had discussed perhaps informally extending

20   discovery through August except two problems arose.

21   There's a trial between our offices that will be

22   starting in front of Judge Friedman I believe August

23   15th and there was also a trial that began in the

24   Oakland County Circuit Court in Mer Sears (phonetic).

25             Your Honor, we have on our end, actually we

1  have hired six additional attorneys and we are

2  attempting to get different bodies in to go to these

3  depositions.  The trouble is is we've only been able to

4  get dates and schedule with Mr. Andrews' calendar and

5  Mr. Reifman is here.  He's a capable attorney as is Mr.

6  Liss and there have been times before where I've been in

7  a deposition with Mr. Liss as well as Mr. Andrews and I

8  do agree that different bodies need to be in place.

9  Your Honor's been very gracious with giving us

10  additional discovery as you did back in April and this

11  time we're not asking that the trial be adjourned, we're

12  asking --

13           THE COURT:  You are actually in effect doing

14  that because when you ask me to extend discovery to

15  October 20 and the dispositive motion cut-off to October

16  31 and keep to a settlement conference of December 5,

17  you're setting us up for failure because there's no way

18  I can review your motions and get you opinions in time

19  for your settlement conference so I wouldn't be able to

20  keep to the settlement conference schedule, I wouldn't

21  be able to keep to our final pretrial conference

22  schedule and therefore I wouldn't be able to keep to our

23  trial schedule.  So by pushing out the discovery by yet

24  four more months, you're going to end up forcing an

25  adjournment of the critical dates of dispositive motion

1    cut-off, the final pretrial conference, the settlement

2    conference and the trial.  I'm not going to do that.

3                MS. HEINONEN:  Your Honor, I don't believe

4    that as I look at my motion that I asked for the

5    dispositive motion cut-off to be extended.  It was the

6    motion with regard to expert testimony.  I believe that

7    the parties have filed whatever dispositive motions that

8    are going to be filed in this case and that includes

9    plaintiff's motion for partial summary judgment which is

10   still pending before the Court.  That was filed I

11   believe -- it was filed last year I believe or at the

12   beginning of this year and that was with regard to Renee

13   Laport's (phonetic) bills.  So we were asking for the

14   discovery to be extended through October 20th and the

15   motion with regard to limiting or excluding expert

16   testimony to be extended to October 31st.

17               THE COURT:  Well, I'm reading from paragraph

18   20 of your motion and it reads rather a request only

19   that fact and expert discovery be extended through

20   October 20, 2011 and that the deadline for filing

21   dispositive motions and motions to limit or exclude

22   expert testimony be extended through October 31, 2011.

23               MS. HEINONEN:  Yes, your Honor.  My

24   apologies.  I overlooked that, but my understanding in

25   preparing for this argument today was just moving the,

1   umm, that we were just going to request that you extend

2   the date for discovery and the date with regard to

3   expert testimony.  As I said your Honor, you have been

4   very gracious and we are very appreciative.  We have

5   been working with plaintiff's office to get dates for

6   depositions and in fact the depositions of Mr. Akins and

7   Mr. McClain were set to go forward and the very date

8   that they were scheduled to go Mr. Andrews and I were

9   held beyond the time for the deposition in the Oakland

10   County Circuit Court on a case that went to trial in, at

11   the end of May, so --

12            THE COURT:  All right.  Let's hear from

13   plaintiff's counsel.

14            MS. HEINONEN:  Thank you, your Honor.

15            MR. REIFMAN:  Good afternoon, your Honor.

16            THE COURT:  Afternoon.

17            MR. REIFMAN:  My name is Benjamin Reifman.

18   I'm filling in for Mr. Andrews.  As you are probably

19   aware, he's out of town.

20            THE COURT:  I wasn't aware of that, but,

21   guess he's a busy guy.

22            MR. REIFMAN:  So you have to excuse me if

23   I'm not as familiar as I'd like to be with these

24   motions.  Additionally this is my first time in Federal

25   Court that's a non-telephonic motion hearing, but I'd

1   like to start with plaintiff's motion unless you'd like

2   me to address the other issues first since we're on top

3   of them?

4            THE COURT:  You've got five minutes.  Do

5   whatever you'd like to do.

6            MR. REIFMAN:  Okay.  Plaintiff's motion is

7   in regard, is relative to documents and materials

8   relative to a private investigation done by State Farm's

9   claim adjuster.

10           THE COURT:  They say that they don't have

11  any objection to turning over those documents so long as

12  they can depose the plaintiff first.

13           MR. REIFMAN:  Correct, but I don't believe

14  that it's proper considering the path of discovery that

15  they've taken.  I think they're late in responding to

16  these.  They've delayed -- they have a duty to timely

17  supplement disclosures.  This material that they've

18  disclosed is at least three months to eight months old.

19           Additionally I don't think that the, that

20  privilege, privileged communications are not intended to

21  be used as a tool to, you know, countermand the rules of

22  discovery and produce things on time.  I mean, yeah, I

23  would like to withhold discovery from them, too, until

24  after I depose their witnesses or up until trial.  It

25  would be, you know, that's a great idea and I think

1    under Pack (phonetic) and Bayer (phonetic) they discuss

2    a party may not avoid discovery by asserting a privilege

3    and then waive the privilege later so as to present the

4    evidence.  I think, you know, it's just simply uncalled

5    for.  That's not what privilege is about and I think I

6    discuss in the brief Upjohn v. U.S., the purpose is to

7    encourage full and frank communications in promotion of

8    a broader public interest.  Here, they did not produce

9    the documents.  They did not let us know the documents

10   existed until we had to send a second set of

11   interrogatories to them asking specifically for these

12   materials even though old interrogatories would have

13   encompassed them.  Then all of a sudden they're like oh,

14   here's our privilege log.

15            Additionally, the privilege log is useless.

16   Their privilege log just says investigation and says

17   privilege, investigator, privilege.  That doesn't tell

18   us what date it occurred on.  Investigative privilege is

19   only for a licensed investigator.  We don't even know

20   who the person was who did the investigation.  If they

21   don't have a license, then they're not entitled to that

22   privilege.  So that's what I have to say on that issue.

23            THE COURT:  Okay.  Any else?

24            MR. REIFMAN:  Well, quite frankly it sounds

25   like, you know, I don't really need to address the other

```
 1    issues other than, umm, their, their motion to compel 10
 2    depositions in 30 days is quite frankly egregious.  I
 3    mean, they know our schedule.  They know we have two
 4    trials with them in the next 40 days and quite frankly
 5    they're trying to, you know, put us in a bind here.  I'm
 6    offended by it especially considering we didn't oppose
 7    their initial motion to extend discovery dates when they
 8    did not -- they didn't file one notice for deposition in
 9    the first eight months and now they're telling us it's
10    our fault that we didn't comply?  I mean, twice they've
11    given us seven to eight deposition notices that were
12    unilaterally scheduled for doctors and for our time
13    without saying anything.  How -- that's not reasonable
14    notice.  So as far as that's concerned, I think I, I'm
15    offended by that motion especially in light of the
16    history in this case and I absolutely do not want to
17    extend the date of the trial date.  I don't think
18    they're entitled to it and I think the rest is in the
19    briefs.
20              THE COURT:  All right.  Well, let me tell
21    you of my displeasure with the way both sides have been
22    conducting this case.  I don't think that either side
23    has been very diligent and I'm very tempted to just
24    leave everybody precisely where they are.
25              I understand everyone have a busy schedule,
```

1    but I can't keep extending dates because every time I

2    extend dates, I end up penalizing the parties who do

3    keep to schedules because then you as the older case end

4    up leap-frogging on top of newer cases even if they're

5    more diligent.  Now that's not fair to those folks and

6    it's not fair to your own clients frankly.  I think your

7    clients deserve more attention than what they're

8    getting.

9            I don't think it's appropriate on a last day

10   of a discovery period to file a motion and then seek to

11   compel 10-plus depositions.  If one side believes the

12   other side is not cooperating in discovery, it's your

13   obligation to promptly file a motion with the Court so

14   that discovery can be completed within the discovery

15   period.  It's not appropriate to wait until the last day

16   of the discovery period, then file a motion to compel

17   and think that you're going to get a sympathetic ear

18   from the Court.  It may well be that the nonmoving party

19   hasn't been forth right and forth coming in arranging

20   for depositions, but the moving party needs to be

21   diligent and needs to seek the Court's assistance in

22   compelling discovery promptly and not waiting until the

23   end of the discovery period.

24           At the same time, the Court is mindful that

25   the discovery is an important tool in narrowing issues

 1   and discovering the truth and in preparing for trial and

 2   so the Court is going to provide some adjustment to the

 3   schedule, but not as much as the defendant has

 4   requested.  First, I'll point out on the record that

 5   defendant has orally modified its motion.  It is no

 6   longer seeking to extend the discovery -- strike that,

 7   the dispositive motion cut-off.  The attorney for

 8   defendant announced that not withstanding the statement

 9   in the written motion, her client is satisfied with the

10   existing dispositive motion cut-off which was July 11.

11   At this point all the defendant is asking for then is an

12   extension of the discovery period, however even that

13   request I think is overly aggressive.  It would allow

14   for yet another four months of discovery beyond the

15   extension that the Court granted back in April and I'll

16   point out that we had our first scheduling order back in

17   October of last year and with the input from the

18   attorneys in this case, we had set a schedule only to

19   modify it in April and now I'm being asked to modify it

20   once again.  I'm not going to give you that full

21   four-month period to conduct further discovery.

22           You are going to have until the end of

23   August, that will be August 31 to complete the discovery

24   and I understand that it is going to be difficult to

25   complete all of the depositions that have been

1    requested.  I think that the defendant has languished

2    far too long in seeking to bring this to the Court's

3    attention, so I'm only going to order the depositions of

4    plaintiff and plaintiff's father and defendant can

5    select two of the treaters to be deposed by the end of

6    August.  If the parties want to agree on more

7    depositions than that, that's fine, but I'm not going to

8    be a party to forcing the plaintiff and his treaters to

9    scramble where the defendant has not been diligent.  So

10   plaintiff and plaintiff's father and two treaters

11   selected by defendant.  That's all I'm going to be

12   ordering to be completed by August 31.  The parties can

13   agree if they want to more depositions or to go beyond

14   that date, but I'm not going to order it.  I'm doing

15   that based on the fact that I don't believe defendant

16   has been diligent in this case so I'm granting the

17   motion in docket 56 in part and denying it in part.  I

18   am granting the motion in docket 58 in part and denying

19   it in part.

20            With respect to the motion in docket 54

21   regarding the investigation documents, I view that

22   really as seeking an order that sets the sequencing of

23   discovery.  I don't see it as recognizing necessarily

24   any privilege or waiver of privilege.  I think the issue

25   is really much easier than that.  It's simply a question

1    of who should have to produce evidence first and I think

2    since the investigation documents should not impact on

3    plaintiff's deposition other than for nefarious reasons,

4    I'm going to order that plaintiff's deposition be taken

5    first and that within seven days of the taking of that

6    deposition, that the so-called investigation documents

7    referenced in docket 54 then be turned over in full.

8    The Court understands the defendant really has no

9    objection to turning over the documents, but simply was

10   concerned about the sequence of the documents.

11          With respect to the in-house nursing

12   evaluation, I'm going to grant that.  That's in docket

13   57.  I think a review of the premises is reasonable.

14   Even if it's not strictly speaking required under the

15   statute, I nonetheless think it's a helpful piece of

16   information in trying to determine what is the physical

17   state of the plaintiff.  I'm going to limit that to no

18   more than three hours.  I think that's a reasonable

19   period of time and if there are any conditions that need

20   to be addressed by the Court, you can submit to me a

21   stipulated order if you can agree or if you can't agree,

22   you'll submit rival orders to me.  That is to be done

23   within one week from today.

24          MR. REIFMAN:  Your Honor, my client has to

25   be evaluated by a nurse and an OT in his own home?  Or

 1    is it just a blank premise?

 2              THE COURT:  It was for an in-house nurse

 3    evaluation.  That's what I --

 4              MR. REIFMAN:  Yeah, but of my client or of

 5    the premises?

 6              THE COURT:  Both.  All right, is there

 7    anything else?

 8              MS. HEINONEN:  One quick question relative

 9    to that last motion, your Honor.  The in-home

10    evaluation, are you ordering that that be completed by

11    August 31st also?

12              THE COURT:  Yes.

13              MS. HEINONEN:  Thank you.

14              THE COURT:  I want all of this done by

15    August 31st.  All right, we will put together an order

16    for you -- yes?

17              MR. REIFMAN:  Your Honor, I have several

18    questions about that last part.

19              THE COURT:  Okay?

20              MR. REIFMAN:  Who are they having -- the

21    rule -- their Rule 26 disclosures have already been put

22    in.  They haven't identified who they're having come in

23    and do these evaluations.  Who are these experts?  I

24    mean, I have all sorts of concerns.  First --

25              THE COURT:  That's why I said counsel I want

1   you to sit down and work out an order that addresses all

2   the conditions.  If you cannot work it out, then you'll

3   each submit to me a proposed order and I'll work it out

4   for you, okay?  One week from today.

5            MS. HEINONEN:  Thank you, your Honor.

6            THE COURT:  All right.  Thank you.

7            (Motions concluded at 2:43 p.m.)

8                --      ---      --

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4

5

6

7

8

9

10

11          I, David B. Yarbrough, Official Court

12     Reporter, do hereby certify that the foregoing pages

13     comprise a true and accurate transcript of the

14     proceedings taken by me in this matter on Wednesday,

15     July 27th, 2011.

16

17

18

19

20     July 29th, 2011          /s/ David B. Yarbrough

21     Date                     David B. Yarbrough, CSR, FCRR
                                600 Church Street
22                              Flint, MI  48502

23

24

25